Mahamed Ayenul ISLAM, Petitioner,

v.

Alberto R. GONZALES, Respondent.

Docket No. 05–1390–AG.

United States Court of Appeals, Second Circuit.

Argued: Aug. 10, 2006.

Decided: Nov. 9, 2006.

Neil A. Weinrib, New York, NY, for Petitioner.

Gail Y. Mitchell, Assistant United States Attorney, for Kathleen M. Mehltretter, Acting United States Attorney for the Western District of New York, Buffalo, NY, for Respondent.

Before B.D. PARKER, WESLEY, HALL, Circuit Judges.

B.D. PARKER, JR., Circuit Judge.

Petitioner Mahamed Ayenul Islam, a native and citizen of Bangladesh, seeks review of a 34 February 14, 2005, order of the Board of Immigration Appeals ("BIA") affirming the May 18, 1998, decision of Immigration Judge ("IJ") Jeffrey S. Chase, which denied Islam's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") on the basis that Islam's testimony and documents lacked credibility. *See In re Mahamed Ayenul Islam,* No. A 73 178 541 (B.I.A. Feb. 14, 2005), *aff'g* No. A 73 178 541 (Immig. Ct. N.Y. City May 18, 1998).

■ Where, as here, the BIA adopts and affirms the decision of the IJ, and supplements the IJ's decision, we review the decision of the IJ as supplemented by the BIA. *See Yan Chen v. Gonzales,* 417 F.3d 268, 271 (2d Cir.2005). We review the factual findings of the BIA and IJ for substantial evidence. *See* 8 U.S.C. § 1252(b)(4)(B); *Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 (2d Cir.2004). We review *de novo* the IJ's determination of mixed questions of law and fact, as well as the IJ's application of law to facts. *See Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003).

## I. The Asylum Hearing

■ During immigration proceedings, an IJ has the authority to "administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." 8 U.S.C. § 1229a(b)(1). Unlike an Article III judge, an IJ is not merely the fact finder and adjudicator, but also has an obligation to establish and develop the record. *See Qun Yang v. McElroy,* 277 F.3d 158, 162 (2d Cir.2002). At the same time, as a judicial officer, an immigration judge has a responsibility to function as a neutral, impartial arbiter and must be careful to refrain from assuming the role of advocate for either party. *See Qun Wang v. Attorney Gen. of the U.S.,* 423 F.3d 260, 261 (3d Cir.2005). During the course of developing a sound and useful record, an IJ must, when appropriate, question an applicant in order, for example, to probe inconsistencies and develop the relevant facts. But it is precisely because of the IJ's responsibility to develop the record during asylum proceedings that the IJ must remain impartial. The IJ has an obligation to conduct hearings in an unbiased way so as to afford each petition-

er a fair and full opportunity to have his case considered.

■ As an officer of the United States government, an IJ represents the government and exercises its authority ex officio. By his or her conduct, the IJ embodies the view that the government is deserving of that authority because, among other reasons, it treats all with respect. Overly aggressive, overtly hostile, or sarcastic questioning is not part of that process since it demeans the witness, demeans the government, and demeans the judicial system. Like any judge, an IJ must display the patience and dignity befitting a person privileged to exercise judicial authority. *Giday v. Gonzales,* 434 F.3d 543, 550 (7th Cir.2006).

These rules hold true even when—especially when—a petitioner is mendacious, even blatantly so. In such circumstances, the judicial officer has a ready response that does not involve personally humiliating the petitioner and damaging the institution he serves. At the conclusion of an opinion describing what transpired and explaining how and why he or she reached her conclusion, the IJ need simply add: "petition denied."

■ Though we are generally deferential in our review of IJ and BIA decisions, when an IJ's conduct results in the appearance of bias or hostility such that we cannot conduct a meaningful review of the decision below, we remand. *See, e.g., Guo–Le Huang v. Gonzales,* 453 F.3d 142, 150 (2d Cir.2006). In this case, IJ Chase's conduct during the hearing frustrates our review of the proceedings. During the course of Islam's hearing, IJ Chase repeatedly addressed him in an argumentative, sarcastic, impolite, and overly hostile manner that went beyond fact-finding and questioning.[1] Even when, as here, an IJ

---

**1.** For example, when Islam told the judge that he received his father's death certificate by

firmly believes a petitioner is not truthful, repetitive verbally abusive comments and questions taint the proceedings, erode the appearance of fairness and call into question the results of the proceeding. Since the IJ repeatedly interrupted Islam when he spoke, did not always allow him to explain what he meant, and sparred and argued with him, we are concerned that IJ Chase's questioning of Islam created an atmosphere in which it might have been difficult for Islam to advocate fully on his own behalf.[2] Because IJ Chase's conduct of the hearing creates substantial uncertainty as to whether the record below was fairly and reliably developed, we remand for further proceedings before a different IJ. *See Guo–Le Huang*, 453 F.3d at 150–1.

## II. The BIA's Decision

Under the Immigration and Nationality Act and its regulations, the BIA is responsible for "resolv[ing] the questions before it in a manner that is timely, impartial, and consistent with the Act and regulations . . . [and for] provid[ing] clear and uniform guidance to the Service, the immigration judges, and the general public on the proper interpretation and administration of the Act." 8 C.F.R. 1003.1(d)(1). Islam argued on appeal to the BIA that IJ Chase had created a hostile environment in the courtroom. Rather than providing any "clear and uniform guidance" on the appropriate treatment of litigants, the BIA's one-page dismissal of Islam's appeal fails to mention his objections to the troubling manner in which his hearing was conducted.

Unfortunately, this is not the first time that the courtroom conduct of IJ Chase has been later questioned by this Court. By our count, this is the seventh time that we have criticized IJ Chase's conduct during hearings. Our recent opinion in *Guo–Le Huang v. Gonzales, supra,* described IJ Chase's "apparent bias against [the applicant] and perhaps other Chinese asylum applicants," 453 F.3d at 150, and five summary orders in our Circuit have expressed similar concerns about IJ Chase's remarks and demeanor while conducting hearings.[3]

mail from his family, IJ Chase responded, "Well, sir, if you asked for a certificate saying that you're the president of Bangladesh, would they send you something?" To Islam's contention that he suffered political persecution in his home country of Bangladesh, IJ Chase responded by analogizing Islam's petition for asylum to a fictional petition that Terry Nichols, the Oklahoma City bomber, might file if he applied for asylum in Bangladesh and claimed that he was persecuted in America.

2. Islam's lawyer told the judge at the end of the hearing, "I believe that . . . a hostile environment was created here today where by [sic] my client was intimidated and maybe prevented from fully testifying completely as to his . . . grounds for asylum."

3. *See Ti Wu Gao v. Gonzales,* No. 05–0012–ag, 2006 WL 2853009, at *3 (2d Cir. Sept.29, 2006) (unpublished summary order) ("In addition to the legal errors permeating the adverse credibility determination, the proceedings below were marred by IJ Chase's behavior, which raises substantial questions as to his possible bias towards Chinese petitioners."); *Jin Yong Chen v. Gonzales,* USCA No. 04–5826, at 5 (2d Cir. April 28, 2006) (unpublished summary order) ("Although this Court is denying the petitions for review, we are concerned by some of the remarks made by the IJ in his oral decision and after issuance of his oral decision. . . . [W]e note that IJ Chase's gratuitous remarks about a petitioner's personal conduct, unrelated to the application at issue, are not appropriately made by a judge."); *Hajderasi v. Gonzales,* 166 Fed.Appx. 580, 582 (2d Cir. Feb.13, 2006) (unpublished summary order) ("We are troubled nonetheless by his sarcastic tone and by [IJ Chase's] manner of questioning, which is easily perceived as badgering. Such behavior by a judge is rarely appropriate."); *Meizi Liu v. BIA,* 167 Fed.Appx. 871, 873 (2d Cir. Feb.17, 2006) (unpublished summary order) ("Furthermore, the Court finds the IJ's conduct toward the petitioner particularly disturbing in this case. Remand is also proper,

Considering the prior instances that we have cited, we hope and expect that the BIA has by this time dealt with IJ Chase's inappropriate behavior. Any failure on its part in this regard would not befit a board charged with stewardship over the conduct of judicial proceedings.

### CONCLUSION

For the forgoing reasons, Islam's petition for review is GRANTED, the decisions of the BIA and IJ are VACATED, and the case is REMANDED for further proceedings before an immigration judge other than IJ Chase. Any pending motion for a stay of removal is DENIED as moot.

See also 439 F.3d 81.

therefore, because the record supports [petitioner's] argument that the Immigration Judge demonstrated a 'pervasive bias and hostility' towards [petitioner], which may have tainted his decision and prejudiced her claim."); *You–Mei Ding v. CIS*, 140 Fed. Appx. 306 (2d Cir. Aug 8, 2005) (unpublished summary order).