05-6055-ag
Maiwand v. Gonzales

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: March 21, 2007          Decided: September 11, 2007)

Docket No. 05-6055-ag

--------------------------------------

MOHAMMAD HOMAYUN MAIWAND,

Petitioner,

- v -

ALBERTO R. GONZALES, Attorney General,

Respondent.

--------------------------------------

Before:   SACK, B.D. PARKER, and HALL, Circuit Judges.

Petition for review of a decision of the Board of Immigration Appeals denying the petitioner's motion to terminate removal proceedings based on his refugee status and denying his applications for a waiver of inadmissibility and relief under the Convention Against Torture.

Petition denied in part and dismissed in part.

MICHAEL P. DIRAIMONDO, DiRaimondo & Masi, LLP (Marialaina L. Masi, Mary Elizabeth Delli-Pizzi, Stacy A. Huber, of counsel), Melville, NY for Petitioner.

PAPU SANDHU, Office of Immigration Litigation, Department of Justice (Peter D. Keisler, Assistant Attorney General, of counsel), Washington, DC for Respondent.

SACK, Circuit Judge:

Mohammad Homayun Maiwand, a native and citizen of Afghanistan, petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying 1) his application for a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c); 2) his request for relief pursuant to regulations implementing the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, adopted Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85 ("CAT"); and 3) his motion to terminate the removal proceedings against him.  In re Mohammad Homayan Maiwand, No. A 28 906 603 (B.I.A. Jan. 29, 2004), aff'g No. A 28 906 603 (Immig. Ct. N.Y. City July 22, 2002).

Maiwand contests the BIA's denial of section 212(c) relief, but his arguments raise no constitutional claim or question of law.  We are therefore without jurisdiction to review the BIA's decision in that regard.  To that extent, we dismiss the petition.  We also dismiss the petition insofar as it asks us to review the correctness of the IJ's fact-finding regarding Maiwand's CAT claim.  To the extent Maiwand argues that the IJ erred in assessing what evidence could satisfy his burden of proof under the CAT regulations, we find the argument to be without merit.

Maiwand's challenge to the third part of the BIA's decision is based on his argument that because he entered the

2

country as a refugee, the BIA is statutorily prohibited from ordering his removal without first cancelling that status. Although this is a question of law that we have jurisdiction to review, we conclude that the BIA's interpretation of the relevant statutes and regulations are reasonable. To that extent, we deny the petition.

**BACKGROUND**

According to Maiwand's testimony before Immigration Judge ("IJ") Alan A. Vomacka, Maiwand is a member of the Mohummed Ziy monarchy, which ruled Afghanistan for about two hundred years prior to the 1980s. In 1988, after the Ziy family was overthrown by the Soviet Union, Maiwand escaped with his wife Fazila to the United States. He was accorded refugee status in 1990. In 1992, the INS[1] granted his application for adjustment of status and, retroactive to 1991, made Maiwand a legal permanent resident ("LPR"). Fazila became a United States citizen in 1997. Maiwand and Fazila have three children born in the United States in 1990, 1992, and 1994, respectively. They are United States citizens.

In 1993, Maiwand, in exchange for $5,000, introduced an Afghani friend, who said he wanted to purchase heroin, to another friend who Maiwand knew was selling heroin. Maiwand was charged by the State of New York with, and pled guilty to, second degree

---

[1] On March 1, 2003, the Immigration and Naturalization Service was reconstituted as the Bureau of Immigration and Customs Enforcement ["ICE"] and the Bureau of U.S. Citizenship and Immigration Services, both within the Department of Homeland Security. Because the rulings at issue in this case were made when the agency was still the INS, we refer to it as the INS in this opinion.

criminal sale of a controlled substance.  Maiwand's conviction subjected him to deportation because it "relat[ed] to a controlled substance."  8 U.S.C. § 1251(a)(2)(B)(i) (1994) (current version at 8 U.S.C. § 1227). The INS issued an order to show cause in 1994.  Maiwand appeared before an IJ, conceded removability, attempted to secure refugee status through his first asylum application, and applied for relief under INA § 212(c).  The IJ found Maiwand ineligible for both forms of relief.  Maiwand's case then began a convoluted journey through the immigration agency and the federal courts, recounted at length in In re Mohammad Homayan Maiwand, No. A 28 906 603 (B.I.A. June 23, 2000).  As relevant to this petition, the BIA remanded Maiwand's case to the IJ in 2000 to allow the IJ to reconsider Maiwand's application for section 212(c) relief and any other relief that might have been available as a result of the amount of time that had passed since the IJ had last considered Maiwand's applications.  See id.

On remand, the IJ denied Maiwand's application for a waiver of inadmissibility pursuant to section 212(c), in large part because new testimony by Maiwand before the IJ convinced the IJ that Maiwand's earlier testimony falsely minimized his involvement in the heroin transaction that led to his 1993 conviction.  In light of the new information and the IJ's corresponding doubts about Maiwand's credibility, the IJ decided not to exercise the Attorney General's discretion delegated to the IJ to grant Maiwand a section 212(c) waiver.

4

The IJ also denied Maiwand's application for CAT relief. The judge recognized that the Afghan government might be unable to protect Maiwand from the violent acts of rogue elements in the country. The IJ nonetheless found that Maiwand had failed to show a "probability that [he] would be taken into custody by the government under the present situation in Afghanistan [or] a probability that if he were taken into custody by some other group, it would be with the acquiescence of the government." Oral Decision Tr., dated July 22, 2002, at 6. In sum, the IJ found, Maiwand had "not established a probability of being tortured in Afghanistan." Id.

Maiwand appealed to the BIA, which affirmed the IJ's denial of relief under both section 212(c) and CAT. Maiwand also filed a motion asking the BIA to terminate the proceedings based on the theory that, as a refugee, he could not be removed from the country. The BIA denied this motion, reasoning that once Maiwand adjusted his status from that of refugee to that of an LPR, his previous refugee status provided no basis for terminating removal proceedings.

Maiwand petitions for review.

**DISCUSSION**

I. Standard of Review

"Where, as here, the BIA adopts and affirms the decision of the IJ, and supplements the IJ's decision, we review the decision of the IJ as supplemented by the BIA." Islam v. Gonzales, 469 F.3d 53, 55 (2d Cir. 2006).

5

We apply the principles of <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984), to agency interpretations of statutes when Congress has delegated law-making authority to the agency and the interpretation was promulgated pursuant to that authority. <u>Ucelo-Gomez v. Gonzales</u>, 464 F.3d 163, 168 (2d Cir. 2006) (citing <u>United States v. Mead Corp.</u>, 533 U.S. 218, 226-27 (2001)). Precedential BIA decisions are eligible for <u>Chevron</u> deference insofar as they represent the agency's authoritative interpretations of statutes. <u>See</u> <u>id.</u> at 170.

## II. Jurisdiction

Because Maiwand was ordered removed pursuant to 8 U.S.C. § 1227(a)(2)(B),[2] we have jurisdiction to review only "constitutional claims or questions of law raised [in his] petition for review." 8 U.S.C. § 1252(a)(2)(D); <u>see also</u> § 1252(a)(2)(C) (providing that its jurisdictional limitations apply when an alien "is removable by reason of having committed a criminal offense covered" in, <u>inter alia</u>, section 1227(a)(2)(B)). "[T]he term 'constitutional claims' clearly relates to claims

---

[2] Section 1227(a)(2)(B) makes deportable "[a]ny alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21)." 8 U.S.C § 1227(a)(2)(B). Maiwand's conviction for the heroin deal falls within this provision. <u>See</u> 21 U.S.C. § 802 (defining a "controlled substance" as any substance listed in a schedule in 21 U.S.C. § 812); 21 U.S.C. § 812 (listing heroin as a schedule I substance).

6

brought pursuant to provisions of the Constitution of the United States." Xiao Ji Chen v. Gonzales, 471 F.3d 315, 324 (2d Cir. 2006). The phrase "questions of law" encompasses "the same types of issues [over which] courts traditionally exercised [jurisdiction] in habeas review over Executive detentions," id. at 326-27, which the Supreme Court has noted is "broader than habeas review over other types of detentions resulting from judicial determinations," St. Cyr, 533 U.S. at 301. In determining whether we have jurisdiction, we must "study the arguments asserted . . . [and] determine, regardless of the rhetoric employed in the petition, whether it merely quarrels over the correctness of the factual findings or justification for the discretionary choices." Xiao Ji Chen, 471 F.3d at 329. If so, we do not have jurisdiction to review it. See id. We have observed, generally, that we have jurisdiction to review "the application of law to fact, including what evidence may satisfy a party's burden of proof." Gui Yin Lin v. INS, 475 F.3d 135, 137 (2d Cir. 2007) (per curiam) (citations omitted).

A. Section 212(c) Relief

Former INA section 212(c) granted the Attorney General discretion to waive deportation orders issued to LPRs who have lived in the United States for at least seven consecutive years. See INS v. St. Cyr, 533 U.S. 289, 294-95 (2001). This provision was repealed by the Illegal Immigration Reform and Immigrant

7

Responsibility Act of 1996 ("IIRIRA").  Section 212(c)'s waiver of inadmissibility relief nonetheless remains available to aliens who pled guilty to crimes prior to the month of April 1997, in which IIRIRA became effective, and who, "notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect."  St. Cyr, 533 U.S. at 326.

Maiwand first disputes the IJ's and BIA's conclusions that his testimony about the heroin transaction in his hearings before the IJ was inconsistent.  He asserts that the apparent inconsistency resulted from superficial questioning of him about his role in the offense at his first hearing.  Because this attack "essentially disputes the correctness of an IJ's fact-finding," Xiao Ji Chen, 471 F.3d at 329, we are without jurisdiction to review it.

Maiwand next argues that his strong family ties to United States citizens, along with other favorable factors, warrant a waiver of inadmissibility under section 212(c) notwithstanding the negative weight that attaches to his drug conviction.  This argument amounts to a challenge to the "wisdom of [the IJ's] exercise of discretion," id., and we therefore have no jurisdiction to review it.

Maiwand also asserts that the BIA ignored a psychiatrist's report that provided evidence of his rehabilitation and the hardships his family would endure if he was removed.  He contends that the BIA thereby abused its

8

discretion and violated his right to due process. But while an "IJ's unambiguous mischaracterization of the record raises a question of law," Gui Yin Liu, 475 F.3d at 138, an argument that "merely quibbles with the IJ's description of the facts," Khan v. Gonzales, --- F.3d ---, ---, 2007 WL 2127712, *3, 2007 U.S. App. LEXIS 17793, *11 (2d Cir. July 26, 2007), does not. Here, the BIA explicitly referenced the report in its opinion. Accordingly, we conclude that Maiwand's complaint regarding the extent of the agency's reliance on the report amounts to nothing more than a "quarrel[] over the . . . justification for the discretionary choices" made, a decision we cannot review. Xiao Ji Chen, 471 F.3d at 329.

## B. CAT Relief

Regulations implementing CAT provide that "once an alien establishes that 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal,' the United States may not remove him or her to that country." Ramsameachire v. Ashcroft, 357 F.3d 169, 184 (2d Cir. 2004) (quoting 8 C.F.R. § 208.16(c)(2)). Maiwand contends that the BIA "failed to cite any basis for its decision" that he had failed to meet his burden of proof and that the decision was "clearly in error, unsupported by the record, and without any basis in fact." Maiwand Br. at 51, 52. Because the latter argument "essentially disputes the correctness of an IJ's fact-finding," Xiao Ji Chen, 471 F.3d at 329, we are without jurisdiction to review it, id. To the extent that Maiwand challenges the IJ's application of

9

facts to the standard of proof required under the CAT regulations, we find the challenge to be without merit.

C.  Motion to Terminate

Maiwand also contends that his motion to terminate the removal proceedings should have been granted because he is statutorily ineligible for removal on the ground that his refugee status was never revoked in accordance with 8 U.S.C. § 1157(c)(4).  This is a question of law that we do have jurisdiction to review.  See Romanishyn v. Attorney Gen. of the United States, 455 F.3d 175, 180 (3d Cir. 2006) ("Whether an alien who entered the country as a refugee and subsequently acquired LPR status may be placed in removal proceedings even though his refugee status was never terminated under 8 U.S.C. § 1157(c)(4), is a question of law.").

III.  Motion to Terminate:  The Merits

The INA provides that a refugee is a person outside the country of his nationality who "is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42).  A refugee may be admitted to the United States notwithstanding 1) the likelihood that he will become a public charge; 2) the absence of a labor certification; and 3) the lack of a valid visa or other entry

10

document. See 8 U.S.C. § 1157(c)(1), (3) (granting the Attorney General discretion, within numerical limits provided in other subsections, to admit refugees). Unless the alien is inadmissible because of, inter alia, his or her involvement in drug trafficking, 8 U.S.C. § 1182(a)(2)(C), the Attorney General may also waive most other grounds for inadmissibility, see 8 U.S.C. § 1157(c)(3) (allowing the Attorney General to waive any ground of inadmissibility except for subsections 1182(a)(2)(C), (3)(A)-(C), (3)(E)).

Refugee status may be terminated only if the Attorney General finds that the alien did not qualify as a refugee at the time of entry. See 8 U.S.C. § 1157(c)(4) (providing for termination of refugee status "if the Attorney General determines that the alien was not in fact a refugee within the meaning of section 1101(a)(42) . . . at the time of the alien's admission").

Maiwand argues that unless his refugee status has been terminated, he may not be removed. But the BIA has recently held otherwise. In re Smriko, 23 I. & N. Dec. 836, 842 (B.I.A. 2005) (finding "no merit to the respondent's assertion that he is immune from removal on the basis of his convictions for crimes involving moral turpitude because his refugee status has not been terminated" under section 1157(c)(4)). The agency noted that the statutes providing for removal refer simply to "any alien" or "the alien" -- they do not distinguish aliens who arrived as refugees from other aliens. See id. at 838 (citing 8 U.S.C. §§ 1227(a), 1229). Moreover, refugees must apply for adjustment

11

to LPR status within a year of their arrival and, upon such application, may be charged with "any applicable ground of inadmissibility . . . or deportability." See id. at 839 (citing 8 U.S.C. §§ 1159, 1229a; 8 C.F.R. § 209.1). The BIA reasoned that "[i]f conditional admission as a refugee does not immunize an alien from the general grounds of admissibility, it follows that a refugee admitted as a lawful permanent resident . . . is not immunized from the grounds for removal that are applicable to all other aliens." Id. at 840. It also considered it "difficult to imagine that Congress intended" the result urged by the petitioner -- viz., a statutory framework that allowed refugees to "commit crimes with impunity, or even engage in terrorist activity and remain exempt from removal" as long as they were in fact refugees at the time of entry. Id. at 841.

The statute is silent as to whether refugee status must be terminated prior to commencement of removal proceedings. See 8 U.S.C. § 1229a (setting forth how removal proceedings are to be conducted without reference to refugee status). We must therefore defer to the agency's interpretation if it is reasonable. See Chevron, 467 U.S. at 843 ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.").

Although we have not yet addressed whether the BIA's interpretation of the relevant statutes in Smriko is reasonable, the Third and Ninth Circuits have done so and both have concluded

12

that it is.  See Kaganovich v. Gonzales, 470 F.3d 894, 897-98 (9th Cir. 2006) (citing Romanishyn, 455 F.3d at 185).  We agree.

As those circuits recognized, refugee status does not afford complete immunity from removal.  See Romanishyn, 455 F.3d at 185 (recognizing that "a refugee may under some circumstances be removed even if his refugee status has not been terminated"); Kaganovich, 470 F.3d at 898 (upholding the BIA's interpretation in light of "statutory text allowing removal of any alien" (emphasis in original)).  The fact that Maiwand's adjustment to LPR status did not terminate his refugee status is irrelevant.  Even if he retained his refugee status, he would have remained subject to removal for committing a drug trafficking offense.  See 8 U.S.C. § 1159 (requiring refugees to "return or be returned to the custody of the Department of Homeland Security [within a year of their entry] for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of," inter alia, 8 U.S.C. § 1229a; 8 U.S.C. § 1229a (providing that "[a]n alien placed in [removal] proceedings . . . may be charged with any applicable ground of inadmissibility . . . or any applicable ground of deportability"); 8 U.S.C. § 1227(a)(2)(B)(i) (making deportable "[a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State . . . relating to a controlled substance").

**CONCLUSION**

13

We have carefully considered the remainder of Maiwand's arguments and find them to be without merit. At the heart of Maiwand's petition are his assertions that the dangers he is likely to face if returned to Afghanistan, his demonstrated rehabilitation, and the hardship his family is likely to suffer upon his removal outweigh the fact of his conviction for a controlled substances offense over a decade ago. While we have no reason to doubt the factual basis for those assertions, for the foregoing reasons, we do not have jurisdiction to address them. The petition for review therefore is dismissed in part, and otherwise denied.