Hernandez Vasquez v. Garland

BIA
Mungoven, IJ
A214 076 059

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of December, two thousand twenty-three.

PRESENT:
> DEBRA ANN LIVINGSTON,
> *Chief Judge,*
> RICHARD C. WESLEY,
> GERARD E. LYNCH,
> *Circuit Judges.*

_____

ESEQUIEL HERNANDEZ VASQUEZ,
> *Petitioner,*

> v.                                                              **21-6633**
>                                                                 **NAC**

MERRICK B. GARLAND, UNITED
STATES ATTORNEY GENERAL,
> *Respondent.*

_____

**FOR PETITIONER:**                Craig Relles, Law Office of Craig Relles,

White Plains, NY.

FOR RESPONDENT:          Brian M. Boynton, Principal Deputy Assistant Attorney General; Sabatino F. Leo, Assistant Director; Aaron D. Nelson, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Esequiel Hernandez Vasquez, a native and citizen of El Salvador, seeks review of a November 12, 2021 decision of the BIA affirming a May 18, 2021 decision of an Immigration Judge ("IJ") that denied his application for relief under the Convention Against Torture ("CAT").[1]  *In re Esequiel Hernandez Vasquez*, No. A214 076 059 (B.I.A. Nov. 12, 2021), *aff'g* No. A 214 076 059 (Immig. Ct. N.Y. City May 18, 2021).  We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed both the IJ's and the BIA's decisions.  *See Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006).  We review factual findings

---

[1]  Hernandez Vasquez does not challenge the agency's denial of asylum and withholding of removal rendered in the same decision.

under the substantial evidence standard and questions of law, including application of law to fact, *de novo*. *Ud Din v. Garland*, 72 F.4th 411, 418 (2d Cir. 2023). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Hernandez Vasquez argues that: (1) the IJ deprived him of due process by failing to develop the record, (2) the IJ should have considered his eligibility for voluntary departure, and (3) the agency erred in denying his CAT claim. We address his arguments in turn.

Hernandez Vasquez's first argument is that the IJ violated his due process rights by failing to develop the record. "To establish a violation of due process, [he] must show that []he was denied a full and fair opportunity to present h[is] claims," *Burger v. Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007) (quotation marks omitted), and "allege some cognizable prejudice fairly attributable to the challenged process," *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) (quotation marks omitted). He has not satisfied this standard.

An IJ has the authority to "receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses," 8 U.S.C. § 1229a(b)(1), and "has an obligation to establish and develop the record," *Islam v. Gonzales*, 469 F.3d 53, 55

3

(2d Cir. 2006). "At the same time, . . . an [IJ] has a responsibility to function as a neutral, impartial arbiter and must be careful to refrain from assuming the role of advocate for either party. During the course of developing a sound and useful record, an IJ must, when appropriate, question an applicant in order, for example, to probe inconsistencies and develop the relevant facts." *Id.* (citation omitted).

The hearing transcript reveals that at the start of the merits hearing in Hernandez Vasquez's removal proceedings the IJ provided Hernandez Vasquez with an opportunity to provide additional evidence, but he provided none. During the hearing, the IJ asked Hernandez Vasquez various questions, including who he was afraid of and why he was afraid of them; why he had come to the United States; why he thought the Salvadoran police were involved with gangs; whether he had past interactions with the Salvadoran police; where he obtained the statistics about killings of deportees that he included in his application; and whether he knew anyone who had been deported to El Salvador. *See* Certified Admin. Record at 94–95, 103–05, 116–17. The record thus contradicts Hernandez Vasquez's claim that the IJ failed to develop the record. Moreover, Hernandez Vasquez has not established the prejudice required to succeed on a due process claim because he has not identified testimony or evidence that he could have

4

presented that would have changed the outcome. *See Garcia-Villeda*, 531 F.3d at 149. Although he correctly notes that the IJ cut off testimony about religion because Hernandez Vasquez did not include a fear of religious persecution in his application, he has not provided any argument as to how that failure prejudiced him – indeed he has not even identified what his religion is, nor has he explained how he would have demonstrated that he would be persecuted or tortured in El Salvador on account of it.

Second, Hernandez Vasquez contends that the IJ failed to inform him of his eligibility for post-completion voluntary departure. But as the BIA found, Hernandez Vasquez did not request that relief. Rather, his counsel addressed voluntary departure at the hearing, stating that she had spoken to Hernandez Vasquez about it, and then questioned him on the record to establish he did not want to pursue it, and did not request voluntary departure after the IJ denied the CAT claim. *See* Certified Admin. Record at 105-07. Hernandez Vasquez has not alleged ineffective assistance of counsel. Further, under these circumstances, he has not established that the IJ was required to independently raise his potential eligibility for the relief. *Cf. Matter of C-B-*, 25 I. & N. Dec. 888, 891–92 (B.I.A. 2012) (concluding that the circumstances warranted remand where the IJ had granted

5

and then withdrawn pre-completion voluntary departure and had not informed the pro se respondent about the availability of post-completion voluntary departure).

In discussing voluntary departure, Hernandez Vasquez also argues that remand is warranted because of audio problems at the hearing, which was conducted through video teleconference. But the IJ instructed Hernandez Vasquez to notify him if he could not hear or understand the interpreter, and Hernandez Vasquez did so on several occasions, and questions were repeated and answered. None of those instances occurred during the discussion of voluntary departure. Accordingly, Hernandez Vasquez has not demonstrated that he was deprived of an opportunity to present a claim for voluntary departure or shown prejudice. *See Garcia-Villeda*, 531 F.3d at 149; *Burger*, 498 F.3d at 134.

Finally, the agency reasonably concluded that Hernandez Vasquez did not establish that he would more likely than not be tortured by gangs. He had the burden to demonstrate that someone in his circumstances would "more likely than not" be tortured "by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); *see Mu-Xing Wang v. Ashcroft*,

6

320 F.3d 130, 143–44 (2d Cir. 2003). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted," and it "is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 1208.18(a)(1), (2). In assessing whether an applicant has satisfied his burden of proof, the agency must consider all evidence relevant to the possibility of future torture, including past torture, ability to relocate, and violations of human rights within the country of removal. *Id.* § 1208.16(c)(3).

Hernandez Vasquez did not allege past torture. Instead, he asserted that he would "more likely than not" be tortured in El Salvador because gang members would recognize him as a deportee and target him based on his perceived wealth. The agency concluded that he did not establish that he would be singled out for torture or, even if he were recognized as a deportee, that he would likely be tortured. The agency further concluded that even if Hernandez Vasquez had established that he would more likely than not be subjected to torture, he failed to establish that the torture would be inflicted by or with the acquiescence of a public official. Hernandez Vasquez has not established that the record compels a contrary conclusion.

7

He alleged that 106 Salvadoran deportees were murdered between 2013 and 2019, and submitted a Human Rights Watch report confirming that statistic and noting some evidence of deportees who were killed for refusing to pay extortion. The Government produced an annual report from the Department of Homeland Security indicating that 18,000 people were removed to El Salvador in 2018, with similar numbers of removals in prior years. The Government also submitted a 2020 State Department report discussing human rights violations in El Salvador, including arbitrary arrests and detention, unlawful killings of gang members, instances of torture, and violent crimes by gangs and drug traffickers, but also that the government was utilizing the police and the military to fight organized crime. That evidence does not compel a conclusion contrary to the agency's determination that Hernandez Vasquez did not establish that he would "more likely than not" be tortured. "[S]ubstantial evidence review does not contemplate any judicial reweighing of evidence. Rather, it requires [the Court] to ask only whether record evidence compelled . . . [a] finding different from that reached by the agency." *Quintanilla-Mejia v. Garland*, 3 F.4th 569, 593–94 (2d Cir. 2021). Contrary to Hernandez Vasquez's argument here, the agency did not apply the wrong standard. It considered the steps he would have to show—that gang

8

members would see and recognize him as a deportee and would decide to harm him in a manner rising to the level of torture. This is not an incorrect standard, as a CAT applicant cannot "show that he faces a more likely than not chance of torture if one link in the chain cannot be shown to be more likely than not to occur. It is the likelihood of all necessary events coming together that must more likely than not lead to torture, and a chain of events cannot be more likely than its least likely link." *Savchuck v. Mukasey*, 518 F.3d 119, 123 (2d Cir. 2008) (quoting *In re J–F–F–*, 23 I. & N. Dec. 912, 918 n. 4 (A.G. 2006)). Accordingly, as Hernandez Vasquez did not allege that he would be singled out from other deportees or establish that deportees generally are more likely than not to be tortured, the agency did not err in denying his CAT claim. *See Mu-Xing Wang*, 320 F.3d at 144 (requiring CAT applicant to "establish[] that someone in his particular alleged circumstances is more likely than not to be tortured" (emphasis omitted)).

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk of Court

9