Sanchez-Gonzalez v. Garland

BIA
Burnham, IJ
A206 624 102/101

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of April, two thousand twenty-four.

PRESENT:
> RICHARD J. SULLIVAN,
> WILLIAM J. NARDINI,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

_____

CARLOS ELIAS SANCHEZ-GONZALEZ,
WILMAN NOE SANCHEZ-GONZALEZ,
> *Petitioners,*

v.

MERRICK B. GARLAND, UNITED
STATES ATTORNEY GENERAL,
> *Respondent.*

21-6485
NAC

_____

FOR PETITIONERS:               H. Esteban Figueroa-Brusi, Brooklyn, NY.

FOR RESPONDENT:               Brian M. Boynton, Principal Deputy Assistant
                              Attorney General; Jonathan A. Robbins,
                              Assistant Director; Margaret Kuehne Taylor,
                              Senior Litigation Counsel, Office of
                              Immigration Litigation, United States
                              Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of

Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND

DECREED that the petition for review is DENIED.

Petitioners Carlos Elias Sanchez-Gonzalez and Wilman Noe Sanchez-

Gonzalez, natives and citizens of El Salvador, seek review of an August 11, 2021,

decision of the Board of Immigration Appeals ("BIA") affirming a September 12,

2019, decision of an Immigration Judge ("IJ") denying their applications for

asylum, withholding of removal, and relief under the Convention Against Torture

("CAT").  *In re Carlos Elias Sanchez-Gonzalez and Wilman Noe Sanchez-Gonzalez,*

Nos. A206 624 102/101 (B.I.A. Aug. 11, 2021), *aff'g* Nos. A206 624 102/101 (Immigr.

Ct. N.Y.C. Sep. 12, 2019).   We assume the parties' familiarity with the underlying

facts and procedural history.

We review the IJ's decision as supplemented and modified by the BIA.   *See*

*Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005); *Yan Chen v.*

2

*Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review factual findings, including nexus determinations, for substantial evidence and questions of law de novo. *See Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009); *Edimo-Doualla v. Gonzales*, 464 F.3d 276, 282–83 (2d Cir. 2006) (reviewing nexus determination for substantial evidence). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## I.    Asylum and Withholding of Removal

Petitioners alleged in their applications that gang members threatened Wilman because one member was romantically interested in their cousin, Fatima. In denying asylum and withholding of removal, the BIA relied solely on the IJ's determination that Petitioners failed to establish a nexus between those threats and a protected ground. Accordingly, we limit our review to whether that determination was supported by substantial evidence. *See Xue Hong Yang*, 426 F.3d at 522. To qualify for asylum and withholding of removal, an applicant must establish "a sufficiently strong nexus" between suffered or feared harm and a protected ground of race, religion, nationality, membership in a particular social group, or political opinion. *Castro v. Holder*, 597 F.3d 93, 100 (2d Cir. 2010); *see*

3

*also* 8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(A). To establish such a nexus, the applicant must show that a protected ground was or will be "at least one central reason for" the claimed persecution. 8 U.S.C. § 1158(b)(1)(B)(i); *Quituizaca v. Garland*, 52 F.4th 103, 109–14 (2d Cir. 2022) (deferring to BIA's application of asylum's "one central reason" standard to withholding claims). Relief "may be granted where there is more than one motive for mistreatment, as long as at least one central reason for the mistreatment is on account of a protected ground." *Acharya v. Holder*, 761 F.3d 289, 297 (2d Cir. 2014) (internal quotation marks omitted). An applicant "must provide *some* evidence of [a persecutor's motives], direct or circumstantial." *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992).

Substantial evidence supports the agency's determination that Petitioners failed to demonstrate that the harm they suffered or feared was or would be on account of a family-based social group. *See Edimo-Doualla*, 464 F.3d at 282–83. They provided no evidence that gang members were motivated to harass or threaten them because of who they were or to whom they were related. *See Elias-Zacarias*, 502 U.S. at 483. To the contrary, Petitioners alleged that the gang members "did not care what [Wilman and Fatima's] relationship was" and that

4

they threatened Wilman only "when they would see him close to Fatima." Certified Admin. Record at 107, 140. Further, Wilman testified that when he was threatened, Carlos was present, but the gang did not threaten or otherwise harm Carlos. This testimony therefore supports the agency's conclusion that Wilman was threatened because a gang member was romantically interested in Fatima and not because of animosity towards Fatima's family. Harm stemming from "general crime conditions" does not constitute persecution on account of a protected ground. *Melgar de Torres v. Reno*, 191 F.3d 307, 314 (2d Cir. 1999). On this record, the agency did not err in finding that Petitioners failed to establish that their family membership was a central reason Wilman was threatened. *See Elias-Zacarias*, 502 U.S. at 483; *Acharya*, 761 F.3d at 297.

## II.  CAT relief

A CAT applicant has the burden to demonstrate that he would "more likely than not" be tortured by or with the acquiescence of government officials. *See* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Id.* § 1208.18(a)(7); *see*

5

*Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004) ("[T]orture requires only that government officials know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it.").

The record does not compel the conclusion that Salvadoran authorities would acquiesce to the brothers' torture by the gang. *See Quintanilla-Mejia v. Garland*, 3 F.4th 569, 592 (2d Cir. 2021). Wilman testified that he feared that the gang would have tortured, kidnapped, and killed him had he stayed in the country. He further testified that he and his family did not go to the police because the gang had spies within the police.

The country conditions evidence reflects that gang crime and violence is pervasive, and that efforts by the authorities to "remedy these situations were generally ineffective." Certified Admin. Record at 164. We have recognized the possibility that government acquiescence may exist where some officials attempt to prevent torture, other officials are complicit, and the government is "unable to actually prevent the torture from taking place." *De La Rosa v. Holder*, 598 F.3d 103, 110–11 (2d Cir. 2010). However, in this case, there was no evidence that government officials participated in, were aware of, or were willfully blind to any past torture, or that they otherwise were involved with the gang members who

6

targeted Wilman. *See Savchuck v. Mukasey*, 518 F.3d 119, 123 (2d Cir. 2008) ("It is the likelihood of all necessary events coming together that must more likely than not lead to torture, and a chain of events cannot be more likely than its least likely link." (internal quotation marks omitted)). The record therefore does not compel the conclusion that Carlos and Wilman are likely to be tortured with government acquiescence. *Cf. Quintanilla-Mejia*, 3 F.4th at 593–94 (finding that the record did not compel the conclusion that the Salvadoran government would acquiesce to gang torture where the petitioner had not reported prior gang assaults to the government, and country conditions evidence showed that gang violence persisted—including instances of involving police misconduct—but also that the government was taking steps to combat gang violence); *see also Mu Xiang Lin v. U.S. Dep't of Just.*, 432 F.3d 156, 160 (2d Cir. 2005) (requiring "particularized evidence" beyond general country conditions to support a CAT claim).

## III.  Bias

Petitioners argue that their due process rights were violated because the single BIA member who adjudicated their appeal was "bias[ed]" against Central American immigrants, as evidenced by the BIA member's prior rulings as an IJ. Pet'rs Br. at 23. But the Supreme Court has recognized that "judicial rulings alone

almost never constitute a valid basis for a bias or partiality motion," *Liteky v. United States*, 510 U.S. 540, 555 (1994), and Petitioners point to no other evidence suggesting that bias played a role in their BIA appeal. Accordingly, neither the BIA member's decision here, nor his rulings in his former position as an IJ, are sufficient to show bias in this case.[1]

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

---

[1] The government suggests that Petitioners are challenging the BIA's authority to dispose of cases through a single member as opposed a three-member panel, which we would lack jurisdiction to review. *See Kambolli v. Gonzales*, 449 F.3d 454, 465 (2d Cir. 2006). But Petitioners concede that the BIA has authority to resolve appeals by single-member decisions and explicitly confirm that they are challenging only the fact that the single member in their case was biased. We therefore have jurisdiction to review this challenge. *See Islam v. Gonzales*, 469 F.3d 53, 55–56 (2d Cir. 2006) (reviewing claim that IJ was biased against certain immigrants).