05-5485-ag
Jin v. Mukasey

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2007

(Argued: December 12, 2007          Decided: August 15, 2008)

Docket Nos. 05-5485-ag, 05-6367-ag, 06-0004-ag, 06-2998-ag

------------------------------------------------------x

YUEN JIN,

Petitioner,

-- v. --

MICHAEL B. MUKASEY,* ATTORNEY GENERAL OF THE UNITED
STATES,

Respondent;

SHAN HU ZHENG,

Petitioner,

-- v. --

BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES,

Respondent;

JIAO FANG CHEN,

Petitioner,

-- v. --

UNITED STATES DEPARTMENT OF JUSTICE, ATTORNEY GENERAL
MICHAEL B. MUKASEY,*

Respondents.

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2),
Attorney General Michael B. Mukasey is automatically substituted
for former Attorney General Alberto R. Gonzales as the respondent
in these cases.

-1-

HUA ZENG,

     Petitioner,

                      -- v. --

BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES,

     Respondent;

--------------------------------------------------------x

B e f o r e :  WALKER, CABRANES, and SACK, Circuit Judges.

Appeal by petitioners Yuen Jin, Shan Hu Zheng, Jiao Fang Chen, and Hua Zeng from decisions of the Board of Immigration Appeals (BIA) denying petitioners' motions to reopen and to file successive asylum applications. Petitioners, who are all under final orders of removal, argue that they should be permitted to reopen their proceedings or file successive asylum petitions on account of changed personal circumstances – namely, the birth of additional children in the United States. In light of the BIA's recent published decision in In re C-W-L, to which we accord Chevron deference, we hold that an alien who is subject to a final removal order and who wishes to file a successive asylum application must do so in conjunction with a motion to reopen pursuant to 8 C.F.R. § 1003.2(c)(3)(ii) and thus may not do so based solely on changed personal circumstances.

Petitions for review DENIED.

Judge SACK concurs in a separate opinion.

STEVEN A. MUNDIE, Baron, Mundie & Shelkin, P.C., New York, N.Y., for Petitioner Jin, No. 05-5485-ag.

JOSHUA BARDAVID (Theodore N. Cox, on the brief), New York, N.Y., for Petitioner Zheng, No. 05-6367-ag.

YEE LING POON (Robert Duk-Hwan Kim, on the brief), New York, N.Y., for Petitioner Chen, No. 06-0004-ag

Lorance Hockert, New York, N.Y., for Petitioner Zeng, No. 06-2998-ag.

MARK R. VON STERNBERG, C. MARIO RUSSELL, Catholic Charities Community Services, New York, N.Y., for Amicus Curiae in Support of Petitioner Zeng in No. 06-2998-ag.

KIRTI VAIDYA REDDY, Assistant United States Attorney, of counsel (Kathy S. Marks, Assistant United States Attorney, of counsel, on the brief), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, N.Y., for Respondents United States Department of Justice and Attorney General Mukasey in Nos. 05-5485-ag, 06-0004-ag.

Nancy L. Miller, Assistant United States Attorney (Craig Oswald, Assistant United States Attorney, on the brief), for Patrick J. Fitzgerald, United States Attorney for the Northern

District of Illinois, Chicago, Ill., *for Respondent Bureau of Citizenship and Immigration Services* in No. 05-6367-ag.

Marvin J. Caughman, Assistant United States Attorney, *for* Reginald I. Lloyd, United States Attorney for the District of South Carolina, Columbia, S.C., *for Respondent Bureau of Citizenship and Immigration Services* in No. 06-2998-ag.

JOHN M. WALKER, JR., <u>Circuit Judge</u>:

These cases, argued in tandem, require us to decide whether an alien subject to a final order of removal who files a successive asylum application based only on changed personal circumstances must also file a motion to reopen based on changed country conditions pursuant to 8 C.F.R. § 1003.2(c)(3)(ii), when the ninety-day deadline has passed for such a motion. Petitioners Yuen Jin, Shan Hu Zheng, Jiao Fang Chen, and Hua Zeng, all Chinese citizens, sought to advance successive asylum claims years after their initial asylum applications were denied and they were ordered removed. Petitioners moved to reopen their proceedings and requested permission to file successive asylum applications, arguing that they were newly eligible for asylum based on the birth of additional U.S.-born children after the entry of their final removal orders.

The Board of Immigration Appeals (BIA) denied the motions and refused leave to file successive asylum petitions because

-4-

petitioners had alleged only changed personal circumstances and not changed country conditions.[1] The latter, the agency concluded, was required for consideration of an untimely motion to reopen, and petitioners could not assert successive asylum claims in the absence of an accompanying motion to reopen pursuant to 8 C.F.R. § 1003.2(c)(3)(ii). The BIA subsequently adopted this conclusion as the holding of its published, precedential opinion, In re C-W-L, 24 I. & N. Dec. 346 (B.I.A. 2007). Because we have determined that the agency's interpretation of the relevant statutory provisions is not arbitrary, capricious, or manifestly contrary to the statute, we defer to the BIA's decision in In re C-W-L and accordingly deny the petitions for review.

**BACKGROUND**

**I. Yuen Jin**

In December 1998, Petitioner Yuen Jin arrived in the United States from Fujian Province, China, and was detained after presenting a fraudulent passport. In January 1999, the INS served her with a Notice to Appear and placed her in removal

---

[1] Jin's motion to reopen was denied on September 16, 2005. See In re Jin, No. A 77 107 473 (B.I.A. Sept. 16, 2005). The BIA denied Zheng's motion to reopen on July 7, 2005. See In re Zheng, No. A 73 605 767 (B.I.A. July 7, 2005). Chen's motion to reopen was denied on December 22, 2005. See In re Chen, No. A 77 777 126 (B.I.A. Dec. 22, 2005). The BIA affirmed the IJ's denial of Zeng's motion on June 21, 2006. See In re Zeng, No. A 77 552 277 (B.I.A. June 21, 2006), aff'g No. A 77 552 277 (Immig. Ct. N.Y. City Jan. 24, 2006).

proceedings. In May 1999, Jin sought asylum, withholding of removal, and relief under the Convention Against Torture (CAT) on the grounds that Chinese authorities forced her to undergo an abortion and that she feared future persecution for illegally departing China.

In September 1999, Jin married Jian Geng Zheng, and in October of that year, she appeared at a hearing before an Immigration Judge (IJ). Finding the petitioner not credible, the IJ issued a decision in December 1999 denying Jin's applications for relief and ordering her removed. In April 2000, while her appeal was pending before the BIA, Jin had her first child. Jin's removal order became final in September 2002 when the BIA affirmed the IJ's decision; Jin did not file a petition for review in this court.

In January 2005, Jin gave birth to her second child, and in July 2005, nearly three years after the BIA issued a final order of removal, Jin filed a motion to reopen her proceedings, claiming that, in light of China's family planning policies, the birth of her second child constituted changed personal circumstances that affected her eligibility for asylum. She also submitted a second asylum application accompanied by supporting documents.

In September 2005, the BIA denied Jin's untimely motion, finding that she had not demonstrated changed country conditions

-6-

as required for the Board to consider a motion to reopen filed more than ninety days after the entry of a final removal order. The BIA did not address Jin's successive asylum petition but construed Jin's motion only as a motion to reopen. Jin filed a timely petition for review of the Board's decision in this court.

**II.  Shan Hu Zheng**

In December 1994, Petitioner Shan Hu Zheng left Fujian Province, China, for the United States, where she arrived without inspection. She filed an initial asylum application, alleging religious persecution. In November 1995, the IJ denied Zheng's application and ordered her deported, finding that the evidence of harassment that she had presented did not rise to the level of persecution. The BIA affirmed in May 1996.

In October 2000, Zheng married Hong Tao Lin, a naturalized U.S. citizen, and later gave birth to two children – one in February 2002, and another in May 2003. After filing unsuccessful motions to reopen in 1999 and 2002, Zheng filed a third motion to reopen in June 2005, claiming that the birth of her second child constituted changed circumstances that warranted the granting of an untimely motion to reopen and made her newly eligible for asylum. Based on her changed personal circumstances, Zheng argued that she could file a successive asylum application.

In July 2005, the BIA denied the motion as both number-

barred and time-barred. The BIA found that Zheng's motion did not fall within an exception to those procedural limitations because the birth of children in the United States did not amount to changed country conditions. Four months later, the BIA reopened Zheng's proceedings sua sponte based on an ineffective assistance of counsel claim. The BIA then reissued its July 2005 decision to enable Zheng to timely file the instant petition for review in this court.

**III. Jiao Fang Chen**

Petitioner Jiao Fang Chen entered the United States in August 1999 as a non-immigrant visitor without a valid entry document. She was subsequently placed in removal proceedings. In June 2000, she filed applications for asylum, withholding of deportation, and CAT relief, claiming that family planning authorities in China forcibly inserted an IUD after the birth of her first child in 1995, that she had secretly removed it, and that she left China to avoid reinsertion of the device. In June 2000, Chen gave birth to her second child, and at her asylum hearing, Chen claimed that she would be forcibly sterilized if returned to China, because she now had more than one child.

The IJ denied Chen's claims and ordered her removed after making an adverse credibility determination and finding that Chen had not adduced sufficient persuasive evidence of systematic forced sterilization under China's one-child policy. In April

-8-

2002, the BIA summarily affirmed. Chen did not file a petition for review of that decision.

In August 2005, Chen filed a motion to reopen and a new asylum application with the BIA, arguing that her untimely filing should be excused because (1) she was now pregnant with her third child and "would definitely be unable to avoid sterilization," and (2) the enforcement of China's family planning laws had become harsher and more widespread since 2002. The BIA denied the motion as untimely, noting that Chen's third pregnancy was not a change arising in China, that changed personal circumstances did not excuse her late filing, and that no change in China's enforcement policy had occurred. The BIA did not address Chen's new asylum application. Chen now petitions for review of that decision.

**IV. Hua Zeng**

Petitioner Hua Zeng, born in Fujian Province, arrived in the United States without inspection in March 1999. He applied for asylum, withholding of removal, and relief under the CAT in July of that year. In his asylum application, Zeng stated that he left China because local officials harassed, attacked, and arrested him after he spoke out against the government. In September 1999, he was placed in removal proceedings, and in February 2000, the IJ ordered Zeng removed in absentia when he failed to attend his removal hearing. The February 23, 2000

-9-

removal order became final after Zeng failed to appeal the IJ's order.

In June 2000, Zeng filed a motion to reopen his proceedings, alleging that he had missed his master calendar hearing because of circumstances beyond his control. The IJ granted him two weeks to file a detailed affidavit and supporting documentation, but Zeng did not file anything more and did not appeal the IJ's denial of the motion.

After the removal order became final, Zeng remained in the United States, married, and fathered two children – one born in December 2002 and the other in October 2005. In January 2006, more than five years after he was ordered removed, Zeng filed with the immigration court a motion to reopen based on his changed personal circumstances. He argued that the birth of his two sons made him newly eligible for asylum relief because he would be forcibly sterilized if removed to China. Zeng also requested permission to file an untimely successive asylum application based on his changed personal circumstances, despite his concession that country conditions had not changed.

The IJ denied the motion, noting that a previous motion to reopen filed by Zeng had been denied on July 14, 2000, and that his current motion to reopen thus violated both the time and numerical restrictions set forth in the applicable regulations. The IJ did not act upon Zeng's request for permission to file a

-10-

second asylum application.

In April 2006, Zeng appealed the IJ's decision to the BIA, arguing that no motion to reopen was required in order to file a successive asylum application. The BIA rejected this argument and dismissed Zeng's appeal. The Board agreed with the IJ that Zeng's second motion to reopen was both time-barred and number-barred and, in addition, found the motion to be ineligible for an exception based on changed country conditions because it was based only on a change in personal circumstances. Zeng then filed a timely petition for review in this court.

**DISCUSSION**

Petitioners' cases present the common question of whether an alien subject to a final removal order may file a successive asylum petition based solely on changed personal circumstances, unaccompanied by a motion to reopen based on changed country conditions. Consistent with its ruling in each of the cases at bar, the BIA recently answered this question in the negative in In re C-W-L, 24 I. & N. Dec. 346, holding that when a petitioner is subject to a final order of removal, his successive asylum application is subject to the same procedural requirements as a motion to reopen and must therefore allege changed country conditions if it is filed more than ninety days after the entry of the final order. Cf. 8 U.S.C. § 1101(a)(47)(B) (providing that a removal order becomes final "upon the earlier of – (i) a

-11-

determination by the Board of Immigration appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals").

We review the BIA's denial of a motion to reopen for abuse of discretion, Kaur v. BIA, 413 F.3d 232, 233 (2d Cir. 2005) (per curiam), and its legal conclusions de novo, "with the caveat that the BIA's interpretations of ambiguous provisions of the INA are owed substantial deference unless 'arbitrary, capricious, or manifestly contrary to the statute,'" Perez Suriel de Batista v. Gonzales, 494 F.3d 67, 69 (2d Cir. 2007) (per curiam) (internal quotation marks and citation omitted) (quoting Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984)). Precedential BIA decisions (i.e., those that have been published), such as In re C-W-L, "are eligible for Chevron deference insofar as they represent the agency's authoritative interpretations of statutes." Maiwand v. Gonzales, 501 F.3d 101, 104 (2d Cir. 2007). And the BIA's interpretation of its own regulation is entitled to "controlling weight unless it is plainly erroneous or inconsistent with the regulation." Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945); see also Jigme Wangchuck v. Dep't of Homeland Sec., 448 F.3d 524, 528 (2d Cir. 2006) (according "substantial deference" to the BIA's interpretations of immigration regulations).

**I.    The Statutory and Regulatory Scheme**

As a general rule, an alien who has filed a previous asylum application that has been denied may not apply again for asylum. 8 U.S.C. § 1158(a)(2)(C).  There is, however, an exception "if the alien demonstrates to the satisfaction of the Attorney General . . . the existence of changed circumstances which materially affect the applicant's eligibility for asylum."  Id. § 1158(a)(2)(D) (emphasis added).  Pursuant to its expressly delegated authority to "provide by regulation for any other conditions or limitations on the consideration of an application for asylum not inconsistent with this chapter," id. § 1158(d)(5)(B), the agency promulgated 8 C.F.R. § 1208.4. Subsection (a)(4)(i) of that regulation provides that the term "changed circumstances" can refer to either changed country conditions or changed personal circumstances, which include "activities the applicant becomes involved in outside the country of feared persecution that place the applicant at risk."  8 C.F.R. § 1208.4(a)(4)(i)(A)-(B).  Petitioners argue, based on these statutory and regulatory provisions, that § 1158(a)(2)(D) permits an alien under a final removal order to file a successive asylum petition on the basis of changed personal circumstances, such as the birth of a second or third child in the United States.  See Wei Guang Wang v. BIA, 437 F.3d 270, 273-74 (2d Cir. 2006).

-13-

Petitioners' argument is complicated, however, by additional provisions of the Immigration and Nationality Act (INA) and their implementing regulations.  Under 8 C.F.R. § 1208.4(b)(3)(ii), "[a]fter completion of . . . removal proceedings, and in conjunction with a motion to reopen pursuant to 8 CFR part 1003 where applicable," an asylum application must be filed with the immigration court having jurisdiction over the prior proceeding.  Id. § 1208.4(b)(3)(ii) (emphasis added).  An alien who is subject to a final removal order and who wishes to reopen his proceedings generally may file only one motion to reopen and must file that motion within ninety days of the date of entry of the final order.  8 U.S.C. § 1229a(c)(7)(A), (C)(i); see also 8 C.F.R. § 1003.2(c)(2).  These numerical and time limitations do not apply, however, if the motion is based on changed country conditions and the relevant evidence was unavailable during the prior proceeding.  8 U.S.C. § 1229a(c)(7)(C)(ii);[2] see also 8 C.F.R. §

---

[2]    The statute provides:

    There is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for relief under sections 1158 or 1231(b)(3) of this title and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding.

8 U.S.C. § 1229a(c)(7)(C)(ii).

-14-

1003.2(c)(3)(ii).[3]  Unlike in the case of a successive asylum application filed under 8 U.S.C. § 1158(a)(2)(D), changed personal circumstances are insufficient to excuse an alien from the procedural requirements of a motion to reopen.  See, e.g., Wang, 437 F.3d at 274 ("The law is clear that a petitioner must show changed country conditions in order to exceed the 90-day filing requirement for seeking to reopen removal proceedings.  A self-induced change in personal circumstances cannot suffice." (citation omitted)); Jian Huan Guan v. BIA, 345 F.3d 47, 49 (2d Cir. 2003) (per curiam) (holding that an alien was not entitled to relief from the ninety-day motion to reopen deadline because she had established only changed personal circumstances, "which does not fit under the exception set forth in 8 C.F.R. [§ 1003.2](c)(3)(ii)").

Reading all of these provisions together, the BIA has interpreted them to provide that: (1) an alien who has completed

---

[3]     The regulation provides:

The time and numerical limitations set forth in paragraph (c)(2) of this section shall not apply to a motion to reopen proceedings:

To apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing[.]

8 C.F.R. § 1003.2(c)(3)(ii).

-15-

removal proceedings and is under a final order of removal, and who wishes to file a new asylum application, must do so in conjunction with a motion to reopen those proceedings; and (2) if such a motion is filed more than ninety days after entry of the final order, the motion must be denied unless the alien can establish changed country conditions.  See In re C-W-L, 24 I. & N. Dec. at 351 ("[T]he regulations require that all asylum applications filed with the Immigration Court after the close of removal, deportation, or exclusion proceedings be accompanied by a properly filed motion to reopen."); id. at 350 ("[8 U.S.C. § 1158(a)(2)(D)], on which the respondent relies for his premise that changes in personal circumstances justify the new asylum application, simply does not apply to a situation where an asylum applicant has already been ordered removed.").

For the reasons expressed below, we hold that the BIA's interpretation of the relevant INA provisions is not arbitrary, capricious, or manifestly contrary to the statute, and that its regulatory interpretation – in particular, its reading of 8 C.F.R. § 1208.4(b)(3)(ii) – is not plainly erroneous or inconsistent with the regulations.  We therefore accord those interpretations deference under Chevron, 467 U.S. 837.

The Board's determination that a properly filed motion to reopen is a prerequisite to the filing of a new asylum petition when the petitioner is under a final removal order has recently

-16-

been affirmed by four other circuits and is based on sound reasoning. See Qing Li Chen v. Mukasey, 524 F.3d 1028, 1030 (9th Cir. 2008) ("We conclude that the BIA's interpretation of [8 U.S.C. §§ 1158 and 1229a(c)(7)], as they affect each other, is a reasonable one, and we defer to that interpretation."); Wen Ying Zheng v. Mukasey, 509 F.3d 869, 872 (8th Cir. 2007) ("[T]he BIA reasonably harmonized the relevant statutes and regulations in concluding that an alien under a final order of removal must successfully reopen under 8 U.S.C. § 1229a(c)(7)(C)(ii) in order to pursue an untimely or successive asylum application under 8 U.S.C. § 1158(a)(2)(D)."); Hai Fan Huang v. Attorney Gen. of the U.S., 249 F. App'x 293, 298 (3d Cir. 2007) (unpublished opinion) ("[W]e cannot say the BIA's requirement that an alien under a final administrative order of exclusion or removal must file a motion to reopen is an arbitrary or capricious interpretation of the immigration laws."); Cheng Chen v. Gonzales, 498 F.3d 758, 760 (7th Cir. 2007) (agreeing with the BIA that 8 U.S.C. § 1229a(c)(7)(C)(ii)'s requirements govern the successive asylum application of a petitioner subject to a final removal order).

The Board's treatment and application of 8 U.S.C. § 1229a(c)(7)(C)(ii) under the facts presented is not inconsistent with 8 U.S.C. § 1158(a)(2)(D). Any potential tension between 8 U.S.C. § 1208.4(a)(4)'s broad provision that changed country conditions or changed personal circumstances can support a new

-17-

asylum application under § 1158(a)(2)(D) and the BIA's determination that only changed country conditions can support a new asylum application filed by an alien under a final removal order is easily resolved.  As the Seventh Circuit noted in Cheng Chen, § 1158(a)(2)(D) "says nothing about the situation in which the applicant has already been ordered removed, the order has become final, and the time for reopening the removal proceeding has expired."  498 F.3d at 760.  Thus, 8 C.F.R. § 1208.4(b)(3)(ii), which discusses the filing of an asylum application "in conjunction with a motion to reopen" when removal proceedings have been completed,[4] and 8 U.S.C. §

---

[4]    In relevant part, 8 C.F.R. § 1208.4(b)(3)(ii) states:

Asylum applications shall be filed directly with the Immigration Court having jurisdiction over the case in the following circumstances:

. . . .

After completion of exclusion, deportation, or removal proceedings, and in conjunction with a motion to reopen pursuant to 8 CFR part 1003 where applicable, with the Immigration Court having jurisdiction over the prior proceeding.  Any such motion must reasonably explain the failure to request asylum prior to the completion of the proceedings.

The regulation does not explicitly require that a motion to reopen accompany an asylum application.  Nevertheless, for the reasons stated below, we agree with the BIA that the regulatory scheme as a whole makes "clear that an asylum application may only be filed with the Immigration Court in conjunction with a motion to reopen."  In re C-W-L, 24 I. & N. Dec. at 350 (internal quotation marks and citation omitted).

-18-

1229(a)(c)(7)(C), which delineates the requirements for such a motion when a final order has issued, can properly be read as filling this gap by setting forth the mechanism by which an alien may file a successive asylum petition when the alien has already been ordered removed.

The BIA's interpretation of the INA gives meaning to both 8 U.S.C. § 1229a(c)(7)(C) and 8 U.S.C. § 1158(a)(2)(D). Under that interpretation, an alien may file a successive asylum application based on changed personal circumstances or changed country conditions, pursuant to 8 U.S.C. § 1158(a)(2)(D), "at any time during proceedings before the entry of a final order of removal or within the 90-day deadline for a motion to reopen. Outside of those circumstances, changed country conditions [under § 1229a(c)(7)(C)] must be shown." In re C-W-L, 24 I. & N. Dec. at 353. The statutory provisions each play a role and apply at different points in the immigration proceeding, with § 1158(a)(2)(D) "apply[ing] principally at an earlier stage of proceedings than[] the 90-day reopening provisions in [§ 1229a(c)(7)(C)]." Id.

It is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. 461, 489 n.13 (2004) (internal quotation marks and

-19-

citation omitted).  But, as the BIA reasoned, petitioners' proposed interpretation that an alien may file a new asylum application at <u>any</u> time – even when subject to a final removal order – without a motion to reopen, and by showing either changed personal circumstances or changed country conditions, would render § 1229a(c)(7)(C) superfluous.  See <u>In re C-W-L</u>, 24 I. & N. Dec. at 351.  An alien could completely bypass the more stringent procedural requirements for a motion to reopen by filing a successive asylum application; neither § 1229a(c)(7)(C)'s ninety-day deadline nor its exception in the case of changed country conditions would ever apply, even after the entry of a final order of removal.

The Board's determination is also consistent with its general administrative procedures.  As the BIA acknowledged in <u>In re C-W-L</u>, as a procedural matter a motion to reopen must be filed with a successive asylum petition after the completion of removal proceedings because the agency could not otherwise consider the new issue raised by the petitioner.  24 I. & N. Dec. at 350 (noting that, in the case presented, the applicant "filed no motion to reopen proceedings, a prerequisite to our taking up any issue arising in his case, given the entry of the removal order against him"); <u>see also</u> <u>id.</u> at 351 (stating that "[t]he only way for us to acquire jurisdiction over a petition for further relief (such as a 'successive asylum application')" when a final order

of removal is in place "is through a properly filed motion to reconsider or reopen"); id. at 354. Nor could the petitioner benefit from a grant of asylum on his successive application unless he first provided the agency with a means of reopening his proceedings to vacate the removal order. See 8 C.F.R. § 209.2(a)(1)(v) (providing that an alien who has been granted asylum may not adjust his status unless he is admissible to the United States).

Petitioners contend that the BIA's interpretation of the INA is contrary to the statutory scheme and to Congress's intent because it would leave without any avenue of relief aliens whose personal circumstances had genuinely changed more than ninety days after a final agency decision in a removal proceeding. We disagree. Notwithstanding the fact that any such aliens would likely have remained in the country in violation of the immigration laws, see 8 U.S.C. § 1253(a)(1)(A) (setting forth penalties for an alien who "willfully fails or refuses to depart from the United States within a period of 90 days from the date of the final order of removal under administrative processes"), 8 C.F.R. § 1003.2(c)(3)(iii) provides that the time and numerical limitations for a motion to reopen "shall not apply to a motion to reopen proceedings . . . [a]greed upon by all parties and jointly filed." Thus, with the government's consent, an alien alleging only changed personal circumstances could reopen his

proceedings and file a successive asylum petition. Furthermore, it is within the BIA's discretion to reopen proceedings sua sponte if it determines, based on a petitioner's particular circumstances, that reopening is warranted. See 8 C.F.R. § 1003.2(a) ("The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision.").

Petitioners also claim that the regulatory history of 8 C.F.R. § 1208.4 "unambiguously establishes" that they are not required to file a motion to reopen with their successive asylum applications. They point, in particular, to the Department of Justice's explicit decision not to include such a requirement in the final version of the regulation:

> Because of inconsistency between the formulation of changed circumstances in [8 U.S.C. § 1158(a)(2)(D)] and the formulation in [8 U.S.C. § 1229a(c)(7)(C)(ii)], which permits an alien to file a motion to reopen beyond the time limit normally applicable to such a motion, the Department has decided to drop the requirement that, for purposes of the prohibition in [8 U.S.C. § 1158(a)(2)(C)], [the changed circumstances] exception may only be raised through a motion to reopen.

62 Fed. Reg. 10,312, 10,316 (Mar. 6, 1997); cf. 62 Fed. Reg. 444, 463 (proposed Jan. 3, 1997) ("Changed circumstances arising after the denial of the application but before the alien's departure or removal from the United States shall only be considered as part of a motion to reopen . . . .").

This argument was considered and rejected by the Third, Seventh, Eighth, and Ninth Circuits and by the BIA in In re C-W-

-22-

L, and we reject it as well.  We find persuasive the BIA's reasoning that

> [t]he cited regulatory history nowhere states that an alien may file unlimited "successive asylum applications" after the entry of a final administrative order of removal without filing a motion to reopen.  At best, the cited regulatory provisions implementing [8 U.S.C. § 1158(a)(2)(D)] are silent on the issue of reopening, most likely because the requirement of an accompanying motion to reopen once a final order of removal has been entered is clearly set forth in other parts of the statutory and regulatory scheme.

In re C-W-L, 24 I. & N. Dec. at 352.  Thus, the regulation's history does not unambiguously support petitioners' argument.  As we have discussed, the current regulation can be read, consistent with 8 U.S.C. § 1158(a)(2)(D), 8 U.S.C. § 1229a(c)(7)(C), and 8 C.F.R. § 1003.2, to provide that a successive asylum application may be filed without a motion to reopen before a final removal order has entered.  See Zheng, 509 F.3d at 872 ("[C]hanging the regulations . . . does not reflect a clear intent to weaken the requirements of a motion to reopen when an alien under a final order of removal seeks to file a[] . . . successive asylum application.").  Petitioners' regulatory history argument therefore does not undermine the reasonableness of the BIA's statutory and regulatory interpretations.

The BIA's determination is further supported by policy considerations that several courts of appeals have recognized as important.  The decisions of the Third, Seventh, and Eighth Circuits were influenced by principles that we articulated in Wei

-23-

Guang Wang v. BIA, 437 F.3d 270. See Zheng, 509 F.3d at 871 (stating that "practical realities support [the BIA's] interpretation," and discussing Wang); Huang, 249 F. App'x at 298; Cheng Chen, 498 F.3d at 760. In Wang, we discussed the policy behind extending the ninety-day deadline for a motion to reopen based on changed country conditions, but not on changed personal circumstances. We noted that it would be "ironic" to allow aliens to reopen their cases following a final order of deportation simply because they were able to change their own personal circumstances (e.g., by giving birth to additional children) while remaining in the United States illegally:

> It is quite a different situation . . . where a petitioner is seeking to reopen his asylum case due to circumstances entirely of his own making after being ordered to leave the United States. In such a situation, it would be ironic, indeed, if petitioners . . . were permitted to have a second and third bite at the apple simply because they managed to marry and have children while evading authorities. This apparent gaming of the system in an effort to avoid deportation is not tolerated by the existing regulatory scheme. The law is clear that a petitioner must show changed country conditions in order to exceed the 90-day filing requirement for seeking to reopen removal proceedings. A self-induced change in personal circumstances cannot suffice.

Wang, 437 F.3d at 274 (citations omitted).

We find this logic equally applicable to successive asylum petitions filed after the BIA has issued a final removal order. Were we to accept petitioners' argument that an alien subject to such an order may file, more than ninety days after its entry, a second asylum application without a motion to reopen, and on the

-24-

basis of only changed personal circumstances, we would be permitting extensive "gaming of the system" because those circumstances could be "entirely of [the alien's] own making." Id. Aliens would have every incentive to disregard their removal orders and remain in the United States long enough to change their personal circumstances (e.g., by having children or practicing a persecuted religion) and initiate new proceedings via a new asylum application.[5]

As the Seventh Circuit suggested in Cheng Chen, some restriction that cannot be manipulated by petitioners must be in place, lest petitioners take advantage of the system by "manufacturing" a new case for asylum. See 498 F.3d at 760 ("It makes no sense to allow an alien who manages to elude capture . . . for years after he has been ordered to leave the country, and has exhausted all his legal remedies against removal, to use this interval of unauthorized presence in the United States to manufacture a case for asylum."). Requiring a petitioner to file a motion to reopen in order to file a new asylum application, and therefore to show changed country conditions if the motion is

---

[5]    Catholic Charities Community Services, as amicus, suggests that an alien's intentions (whether "good-faith" or not) are irrelevant if the changed personal circumstances place the alien at risk of persecution upon return to his country of origin. Of course, there is no indication that the petitioner in Wang, or the petitioners in the instant cases, have engaged in bad-faith gamesmanship of the immigration process. We note, however, that the rules governing successive asylum petitions are designed to avoid such manipulation.

untimely, provides one such restriction against manufacturing a case for asylum.

Such a requirement also promotes the agency's interest in finality. The Supreme Court has recognized this interest as important in the immigration context. See INS v. Doherty, 502 U.S. 314, 323 (1992) (noting that "[m]otions for reopening of immigration proceedings are disfavored" because "as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States"); INS v. Abudu, 485 U.S. 94, 107-08 (1988) (noting the "strong public interest" in finality, and endorsing the view that the INS should have the right to be restrictive in granting motions to reopen because "[g]ranting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts"). Accepting petitioners' argument would permit aliens to file a new asylum application at any time, virtually without restriction, undermining significantly the finality of immigration proceedings.

We conclude that the BIA's interpretation of the INA and its implementing regulations are reasonable, fully consistent with the relevant statutory and regulatory provisions, and comport with sound and well-established policy considerations. We therefore affirm its holding that an alien under a final removal

order must file a successive asylum application in conjunction with a motion to reopen and in accordance with those procedural requirements. We also note that we are not bound by our comment in Jian Huan Guan v. BIA, 345 F.3d 47 (2d Cir. 2003) (per curiam), that such an alien may request permission to file a successive, untimely asylum application based only on changed personal circumstances, because that comment was contained in dicta. See id. at 49; see also Zheng, 509 F.3d at 872 (stating that the language in Guan was dictum); Cheng Chen, 498 F.3d at 760 (same); In re C-W-L, 24 I. & N. Dec. at 353 (same); cf. Chang Hua He v. Gonzales, 501 F.3d 1128, 1133 n.9 (9th Cir. 2007) (suggesting, in dicta, that the petitioner could file a successive asylum application without a motion to reopen); Haddad v. Gonzales, 437 F.3d 515, 518 (6th Cir. 2006) (same); cf. also Qing Li Chen, 524 F.3d at 1033 ("[W]e are not bound by He's offhand observation."); Xiao Xing Ni v. Gonzales, 494 F.3d 260, 272-73 (2d Cir. 2007) (Calabresi, J., concurring).

**II. Constitutional Challenges**

Petitioners raise two constitutional challenges to the BIA's determination, both of which we reject as meritless.

**A. Due Process**

Petitioners contend that the BIA's interpretation of the INA violates aliens' due process rights by depriving them of a hearing when they have experienced only changed personal

-27-

circumstances. But petitioners have not established any liberty or property interest in asylum that warrants Fifth Amendment protection. We agree with the views of other circuits that have addressed similar due process claims in the context of discretionary relief. See, e.g., Smith v. Ashcroft, 295 F.3d 425, 430 (4th Cir. 2002) (noting that aliens have no protected liberty or property interest in a waiver of deportation under former INA § 212(c) because such relief is discretionary, "a circumstance fatal to [a] due process claim"); Oguejiofor v. Attorney Gen. of the U.S., 277 F.3d 1305, 1309 (11th Cir. 2002) ("[A]n alien has no constitutionally-protected right to discretionary relief or to be eligible for discretionary relief." (emphasis added)). We hold that an alien who has already filed one asylum application, been adjudicated removable and ordered deported, and who has nevertheless remained in the country illegally for several years, does not have a liberty or property interest in a discretionary grant of asylum. In other contexts, we have suggested in dicta that an alien's interest "in not being returned [to a country where he fears persecution] may well enjoy some due process protection not available to an alien claiming only admission." Yiu Sing Chun v. Sava, 708 F.2d 869, 877 (2d Cir. 1983); see also Augustin v. Sava, 735 F.2d 32, 37 (2d Cir. 1984) (noting that the INA "prohibits the Attorney General from deporting or returning an alien to a country in which his life or

-28-

freedom would be jeopardized," but leaving open the question of "whether or not due process protections apply to an application for a discretionary grant of asylum"). We do not consider those situations here, nor do we address whether an applicant for withholding of removal or relief under the CAT would have a protectable interest in those mandatory forms of relief.

In any event, assuming arguendo that petitioners had a protectable interest in relief under § 1158(a)(2)(D), they have not been denied due process. We stated in Augustin v. Sava:

> The requirements of the due process clause are flexible and dependent on the circumstances of the particular situation examined. Without attempting precisely to map the contours of due process in the immigration area, we think that the protected right to avoid deportation or return to a country where the alien will be persecuted warrants a hearing where the likelihood of persecution can be fairly evaluated.

735 F.2d at 37 (citation omitted). Any alien to whom the BIA's determination would apply would have already had a full and fair removal hearing (which resulted in a final removal order) as well as the adjudication of their initial asylum application. The alien is afforded additional process by the opportunity to submit and offer evidence on a motion to reopen his earlier proceedings; if the motion is granted, a hearing will be held. 8 U.S.C. § 1229a(c)(7)(B). Thus, petitioners cannot succeed on their due process challenge.[6]

---

[6] In his concurrence, Judge Sack acknowledges that our evaluation of petitioners' due process claim involves a two-part inquiry, but he disagrees with the approach that we adopt –

-29-

**B. Equal Protection**

Petitioners also argue that the BIA's interpretation results in an equal protection violation in that it treats aliens under a final removal order who nevertheless remain illegally in the United States differently than aliens under a final removal order who comply with the order by leaving, but who later reenter the United States illegally. The latter class may apply for withholding of removal and is not required to present evidence of changed country conditions to support a determination of reasonable fear. See 8 C.F.R. § 1241.8(e); id. § 1208.31. Under the BIA's rulings, however, the former class may not reopen proceedings or submit a new asylum application without showing

namely, addressing the first part of the inquiry first. While he notes that "we have not hesitated to dispose of the claim on the second question alone," **Concurrence at 2-3**, it is also true that we have not hesitated to rest our analysis on the first question alone, see, e.g., Connolly v. McCall, 254 F.3d 36, 42 (2d Cir. 2001) (per curiam) (rejecting a due process claim on the ground that the plaintiff could not establish a property interest in his continued participation in a pension scheme). Indeed, we have often found it prudent, as we have here, to rest our analysis on the first question but nevertheless to address the second. See, e.g., McMenemy v. City of Rochester, 241 F.3d 279, 286-88 (2d Cir. 2001) (Sack, J.) (concluding that the plaintiff lacked a cognizable properly interest, "[b]ut even if he did have a property interest, he was not deprived of it without due process of law").

Nor is it at all clear, as the concurring opinion contends, that the issue of petitioners' interests in asylum relief is "unsettled" or less "easily answered" than whether the procedures afforded were constitutionally adequate. **Concurrence at 2.** Furthermore, any "complications" in due process analysis arising from interests in withholding of removal or relief under the CAT are not at issue here.

changed country conditions.

To successfully assert an equal protection challenge, petitioners must first establish that the two classes at issue are similarly situated. "[T]he government can treat persons differently if they are not 'similarly situated.'" Jankowski-Burczyk v. INS, 291 F.3d 172, 176 (2d Cir. 2002) (internal quotation marks and citation omitted). Petitioners have failed to do so here. Aliens who disregard a final removal order and remain in the country illegally are not similarly situated to aliens who have complied with a final order but subsequently reenter the United States and try to seek relief. Cf. id. at 178 (concluding that legal permanent residents and non-legal permanent residents are not similarly situated for purposes of equal protection analysis).

Assuming arguendo that the two classes of aliens were similarly situated, petitioners' equal protection claim would fail on other grounds. The challenged classification is not protected, and there is no fundamental right at stake, see supra Part II.A; thus, the proper standard of review is rational basis. See Heller v. Doe, 509 U.S. 312, 319-20 (1993) ("[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the

-31-

disparity of treatment and some legitimate governmental purpose." (citations omitted)). Furthermore, "[a] sufficient reason need not be one actually considered by Congress." Jankowski-Burczyk, 291 F.3d at 178. A classification subject to rational basis review "must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. Where there are plausible reasons for Congress' action, our inquiry is at an end." FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313-14 (1993) (emphasis added) (internal quotation marks and citations omitted).

There is a rational basis for distinguishing between aliens who comply with their final removal orders and those who do not, and for giving the former greater legal protection than the latter. As the government has argued, "[i]t is surely rational for Congress to treat scofflaws who disobey orders of removal less favorably than aliens who obey such orders." Supplemental Br. for Resp't in No. 06-2998-ag at 48. Congress may well have wanted to prevent abuse of the asylum process and to create an incentive for aliens to comply with final orders of removal. Furthermore, Congress could have determined that aliens who complied with their removal orders were less likely upon return to "game the system" by changing their personal circumstances, compared to aliens who deliberately disobeyed their orders and

chose to remain in the country.  Because any distinction drawn between aliens who comply with their final removal orders and those who do not is rationally related to a legitimate governmental purpose, we conclude that there is no equal protection violation.

**III. Treaty and Customary International Law-Based Challenges**

Finally, petitioners argue that under the United Nations Protocol Relating to the Status of Refugees ("Protocol"), Jan. 31, 1967, 19 U.S.T. 6223, T.I.A.S. No. 6557, and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT), Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), the agency has an obligation to ensure that aliens will not be returned to a country in which they are likely to face persecution or torture.  On that basis, petitioners claim that the BIA's actions violated their rights under international law because, if removed, they will be persecuted for violating China's family planning policies. Petitioners also argue that the BIA's interpretation violates customary international law in general and the principles of non-refoulement and protection of refugees "sur place" in particular.

But neither the Protocol nor the CAT are self-executing treaties.  See Pierre v. Gonzales, 502 F.3d 109, 119 (2d Cir. 2007) (CAT); Bertrand v. Sava, 684 F.2d 204, 218-19 (2d Cir. 1982) (Protocol); see also Purwantono v. Gonzales, 498 F.3d 822,

-33-

824 (8th Cir. 2007) (Protocol); Sukwanputra v. Gonzales, 434 F.3d 627, 632 (3d Cir. 2006) (same); Singh v. Ashcroft, 398 F.3d 396, 404 n.3 (6th Cir. 2005) (CAT); Auguste v. Ridge, 395 F.3d 123, 132 (3d Cir. 2005) (same); cf. Medellin v. Texas, 128 S. Ct. 1346, 1365 (2008) (CAT). They therefore do not create private rights that petitioners can enforce in this court beyond those contained in their implementing statutes and regulations (i.e., the INA). See Dreyfus v. Von Finck, 534 F.2d 24, 30 (2d Cir. 1976) ("It is only when a treaty is self-executing, when it prescribes rules by which private rights may be determined, that it may be relied upon for the enforcement of such rights."). And we have determined that the BIA's rulings are fully consistent with the framework of the INA and its relevant regulations. Furthermore, even if the treaties were self-executing, "there is a strong presumption against inferring individual rights from international treaties." United States v. De La Pava, 268 F.3d 157, 164 (2d Cir. 2001); see also Medellin, 128 S. Ct. at 1357 n.3 (collecting cases in the courts of appeals acknowledging such a presumption). Accordingly, we reject petitioners' treaty-based argument.

Petitioners have also presented no evidence that the BIA's interpretation of the statutory provisions conflicts with principles of customary international law. And even if there were a conflict, "United States law is not subordinate to

customary international law or necessarily subordinate to treaty-based international law and, in fact, may conflict with both." United States v. Yousef, 327 F.3d 56, 91 (2d Cir. 2003); see also Sosa v. Alvarez-Machain, 542 U.S. 692, 731 (2004) (noting that Congress may "shut the door to the law of nations entirely[] . . . at any time (explicitly, or implicitly by treaties or statutes that occupy the field), just as it may modify or cancel any judicial decision so far as it rests on recognizing an international norm as such"). We have said repeatedly that when there is a conflict between a statute and customary international law, the statute controls. See Pierre, 502 F.3d at 119 ("An act of Congress will govern in domestic courts in derogation of previous treaties and customary international law."); Olivia v. U.S. Dep't of Justice, 433 F.3d 229, 236 (2d Cir. 2005) ("[C]lear congressional action trumps customary international law. This rule, of course, applies in immigration matters." (internal quotation marks and citations omitted)). Thus, petitioners' argument based on customary international law also fails.

**IV. Disposition of the Instant Cases**

Applying the agency's statutory interpretation, which we affirm, to petitioners' cases, we conclude that the BIA did not abuse its discretion in denying petitioners' motions to reopen. Petitioners were all subject to final orders of removal after their initial asylum applications were denied. They were

therefore required to properly file a motion to reopen to pursue a new asylum application.  Because petitioners filed their requests for relief more than ninety days, indeed several years, after the entry of their final removal orders, their motions to reopen were untimely and, pursuant to 8 U.S.C. § 1229a(c)(7)(C)(ii) and 8 C.F.R. 1003.2(c)(3)(ii), they were required to demonstrate that conditions in China had changed.

Petitioners requested reopening and asylum based on the birth of a second or third child in the United States.  But it is well settled in this circuit that the birth of additional children in the United States is evidence of changed personal circumstances, not changed country conditions within the meaning of 8 C.F.R. § 1003.2(c)(3)(ii).  See, e.g., Wang, 437 F.3d at 273-74; Guan, 345 F.3d at 49 ("Guan's evidence is essentially of changed personal circumstances in the United States based on the birth of her two sons . . . .").  Because petitioners failed to satisfy the requirements for a motion to reopen, the BIA did not err in denying their motions or failing to consider their successive asylum applications.

Petitioners raise some additional arguments that pertain to their individual cases.  We have considered those arguments and find all of them to be without merit.

**CONCLUSION**

For the foregoing reasons, the petitions for review are DENIED. Having completed our review, any stay of removal that the court previously granted in these proceedings is VACATED, and any pending motion for a stay of removal is DISMISSED as moot.

Jin v. Mukasey, No. 05-5485-ag
Zheng v. B.C.I.S., No. 05-6367-ag
Chen v. U.S. Dep't of Justice, No. 06-0004-ag
Zeng v. B.C.I.S., No. 06-2998-ag


SACK, Circuit Judge, concurring in part:

_____


I concur in judgment of the majority.  I also join in Judge Walker's opinion for the majority, with one exception.

The majority resolves the petitioners' due process challenge by concluding, first, that "an alien who has already filed one asylum application, been adjudicated removable and ordered deported, and who has nevertheless remained in the country illegally for several years, does not have a liberty or property interest in a discretionary grant of asylum," ante at **[28]**; and second, that "[i]n any event, assuming arguendo that petitioners had a protectable interest in relief [they sought], they have not been denied due process," ante at **[29]**.  As to the first point -- the existence of a liberty or property interest -- the majority may well be right.[1]  But I would prefer not to

_____

[1]    Because I think we ought not reach this issue, I arrive at no conclusion with respect to it.  I point out, nonetheless, that the issue may not be as simple as the majority makes it appear.  Although asylum is a discretionary form of relief, INS v. Aguirre-Aguirre, 526 U.S. 415, 420 (1999), and the Due Process Clause does not protect benefits that "government officials may grant or deny . . . in their discretion," Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005), every asylum applicant is nonetheless entitled to due process in establishing her eligibility for that form of relief, see, e.g., Ali v. Mukasey, 529 F.3d 478, 490 (2d Cir. 2008); Burger v. Gonzales,

-38-

purport to decide categorically here this issue of first impression.  The same result obtains independently under the majority's alternative rationale, with which I agree -- that due process was, in fact, afforded to the petitioners.

Evaluating a due process claim involves a two-part inquiry in which we ask: "1) whether plaintiffs possess a liberty or property interest protected by the Due Process Clause; and, if so, 2) whether existing . . . procedures are constitutionally adequate."  Kapps v. Wing, 404 F.3d 105, 112 (2d Cir. 2005).  When the first question is unsettled and the second question is easily answered in the affirmative, we have not hesitated to

498 F.3d 131, 134 (2d Cir. 2007); see also Zadvydas v. Davis, 533 U.S. 678, 693-94 (2001) ("[T]his Court has held that the Due Process Clause protects an alien subject to a final order of deportation, though the nature of that protection may vary depending upon status and circumstance." (citations omitted)).

The due process issue is also complicated because, unlike asylum, withholding of removal under 8 U.S.C. § 1231(b)(3) and the Convention Against Torture is mandatory.  Delgado v. Mukasey, 508 F.3d 702, 705 (2d Cir. 2007); Yang v. Gonzales, 478 F.3d 133, 141 (2d Cir. 2007); 8 U.S.C. § 1231(b)(3)(A).  We have said that "some due process protection surrounds the determination of whether an alien has sufficiently shown that return to a particular country will jeopardize his life or freedom so as to invoke the mandatory prohibition against his return to that country."  Augustin v. Sava, 735 F.2d 32, 37 (2d Cir. 1984).  Furthermore, the INA's implementing regulations provide that "[a]n asylum application shall be deemed to constitute at the same time an application for withholding of removal."  8 C.F.R. § 208.3(b).  Any BIA policy restricting the ability to apply for asylum will therefore also implicate withholding of removal, a form of relief that carries due process protection.

I think we should refrain from addressing these and related issues until we are required to do so.

-39-

dispose of the claim on the second question alone.  See, e.g.,
Gaston v. Coughlin, 249 F.3d 156, 162 (2d Cir. 2001); Rojas-Reyes
v. INS, 235 F.3d 115, 124 (2d Cir. 2000).[2]

I think we should do so here.

---

[2]    I do not think the majority's citations to Connolly v.
McCall, 254 F.3d 36 (2d Cir. 2001) (per curiam), where the second
question was not easily answered in the affirmative, or McMenemy
v. City of Rochester, 241 F.3d 279 (2d Cir. 2001), where the
narrow first question -- whether the plaintiff had the property
interests he claimed -- was answered largely by reference to
well-settled Supreme Court, Second Circuit and New York law,
affect this conclusion.